IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

VALERIE J. MOORE,                )
                                 )
            Plaintiff,           )
                                 )
v.                               )   Case No. CIV-10-276-RAW
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social           )
Security Administration,         )
                                 )
            Defendant.           )

**REPORT AND RECOMMENDATION**

Plaintiff Valerie J. Moore (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on August 17, 1961 and was 48 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a factory line worker. Claimant alleges an inability to work beginning October 26, 2007 due to limitations resulting from post-surgical

3

degenerative arthritis of both knees, cervical and lumbosacral spine disorders, and obesity.

**Procedural History**

On October 26, 2007, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and on October 31, 2007, Claimant filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On August 13, 2009, an administrative hearing was held before ALJ Lantz McClain in Tahlequah, Oklahoma. On October 26, 2009, the ALJ issued an unfavorable decision on Claimant's applications. On June 8, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in that: (1) his findings are not supported by substantial evidence; (2) his hypothetical questioning of the vocational expert was too limited to support the ALJ's ultimate determination on Claimant's RFC; and (3) the ALJ did not take into consideration all of Claimant's limitations in arriving at her RFC.

**The ALJ's Findings and RFC Evaluation and Conclusions**

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease of the knees[2], status post surgery on both knees, degenerative disc disease of the spine, and morbid obesity. (Tr. 11). On May 2, 2006, x-rays of Claimant's knees revealed spurring at the medial and lateral aspect of the knee joint space, spurring at the intercondylar eminence, and posterior patellar spurring and spurring at the anterior and posterior aspects of the femoral joint surface. (Tr. 186). Claimant was attended by Dr. Von Phomakay, who diagnosed her on August 1, 2007 with degenerative knee arthritis bilaterally, among other conditions. (Tr. 197-98).

Claimant testified to a long history of arthroscopic knee

---

[2] It is presumed that the finding was actually intended to be degenerative joint disease with regard to Claimant's knees.

surgeries, problems walking, and difficulties bending, kneeling, and crouching. (Tr. 25). Claimant also stated she had to sit after walking for long periods due to swelling and pain in her knees and that she had fallen on uneven surfaces. (Tr. 26). Claimant has trouble on stairs and can only remain standing for 15 to 20 minutes before requiring rest. Id. Claimant's pain interferes with her ability to concentrate, requiring help from coworkers. (Tr. 27-28).

On January 4, 2008, Claimant was evaluated by Dr. Jimmie W. Taylor. Dr. Taylor found Claimant suffered from degenerative joint disease of the knees, degenerative joint disease of the low back, stomach pain attributable either to gastritis or peptic ulcer disease, obesity, dizziness, nausea, and probable peripheral vascular disease evidenced by poor pedal pulses. (Tr. 230). He noted that while Claimant had no deformities of the extremities, she had "very painful knees" and that she experienced "crying with knee movement and weight bearing." (Tr. 229). Claimant was positive for pain in flexion, extension, and left and right bending. She also had positive straight leg raising while both sitting and lying. (Tr. 232).

Dr. Taylor also found Claimant had no sensory loss in her lumbar spine, had normal strength, normal walking, and no muscle

spasms. (Tr. 232). Claimant also had full range of motion of her back. (Tr. 233).

On February 22, 2008, Dr. Thurma Fiegel completed a Physical Residual Functional Capacity Assessment on Claimant. She concluded Claimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for about 6 hours in an 8 hour workday, sit for about 6 hours in an 8 hour workday, and have no limitations on pushing and/or pulling. Dr. Fiegel found that while Claimant complained of back and knee pain, she had full motion, a safe and stable, waddling gait. X-ray evidence showed degenerative disease of the right knee but no nerve root compression. (Tr. 236). Dr. Fiegel limited Claimant to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 237).

In reaching his RFC assessment, the ALJ found Claimant's testimony that she cannot get out of bed 10 to 12 days out of the month to be not credible. He found that although the medical record does indicate Claimant received injections in her knees, she had not had any injections since 2007, suggesting that the pain in her knees had diminished or is not of such effect that requires regular intervention. (Tr. 14). The ALJ also found no objective medical evidence to support lower back pain claims by Claimant.

7

Id. Claimant's testimony that the installation of hardware in her knees was recommended was found not to be credible since no such recommendation by a medical professional appears in the record. Id. The ALJ also noted that none of Claimant's treating physicians submitted an opinion on the disabling nature of Claimant's alleged impairments. (Tr. 15). The ALJ assigned "great weight" to the opinions of Dr. Taylor. Id. He then rejected the opinion of the DDS' consultant, Dr. Fiegel, dated February 22, 2008 since the opinion did not "fully take into account the claimant's subjective complaints about her lower back and limitations imposed by her knee pain." Id.

With regard to Claimant's complaints of vertigo, the ALJ found Claimant's testimony to be less than credible. Claimant had testified she had quit her job on the manufacturing line at Whirlpool when she got sick and dizzy such that she fell and hit her head on the ground at work. She considered her continued employment on the line to be a danger to herself since she could have fallen into the line. (Tr. 14). The ALJ found the event was not documented in the medical record and would have expected such considering the dramatic nature of the event. Id.

Without doubt, a dearth of medical evidence exists in the record to support Claimant's assertions of limitation and pain. In

8

particular, the lack of treating medical opinions on limitations imposed by her conditions is curious and telling as reflecting upon Claimant's credibility.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or

other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ correctly and reasonably noted the lack of supporting objective medical evidence. Claimant's challenge to the ALJ's characterization of her knee pain as "diminishing" is not persuasive. The ALJ concluded the lack of treatment suggested either diminished pain or a condition not requiring regular intervention. This is a reasonable conclusion based upon the criteria of Soc. Sec. R. 96-7p. The ALJ did not completely discount Claimant's pain from her knees as Claimant suggests – he found the pain was not debilitating to the level alleged by Claimant.

The same may be said for the ALJ's discounting of Claimant's assertions of limitation in her testimony with regard to her vertigo/dizziness. While her vertigo is well-documented, it was also treated with medication and was not a continuing and severe

limitation noted by her treating physicians.

Curiously, Claimant appears to be critical of the ALJ's rejection of Dr. Fiegel's RFC assessment. A review of the assessment would support a finding of a greater level of RFC work capability than the sedentary limitation found by the ALJ. Consequently, taken as a whole, this Court finds no error in the ALJ's findings or assessment of Claimant's credibility.

### Hypothetical Questioning of the Vocational Expert

Claimant next criticizes the ALJ's questioning of the vocational expert, contending it did not consider any of Claimant's limitations or RFC. The ALJ did not rely upon the vocational expert in arriving at an RFC for Claimant. Instead, the ALJ relied upon the grids in concluding Claimant was not disabled. (Tr. 16). Claimant does not assert in his arguments that reliance upon the grids was inappropriate. Consequently, this Court finds no error in the ALJ's questioning of the vocational expert.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given

11

fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 31st day of August, 2011.

*signature*
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE